E-FILED
Wednesday, 13 July, 2016  09:30:58 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

_____

**PAUL OTIS, MEGAN HURLEY OTIS,
STACY RAHN, KAITLYN JENNINGS,
STACI WALKER, KAYLA RIGGINS,
TANYA WILSON, ALEXA LUCAS,**
and **CLINT BEELER,**
Individually and on behalf of all other
similarly situated current and former employees,

Plaintiffs,

**CASE NO. _____**

v.

**O'CHARLEY'S LLC,**
a Tennessee Limited Liability Company,
**O'CHARLEY'S MANAGEMENT
COMPANY, LLC,**
a Tennessee Limited Liability Company,
**O'CHARLEY'S SERVICE COMPANY, LLC,**
a Tennessee Limited Liability Company, and
**AMERICAN BLUE RIBBON HOLDINGS, LLC,**
a Delaware Limited Liability Company, and
**HAZEM OUF**, an Individual,

**FLSA Opt-In Collective Action**

**Rule 23 Class Action**

**JURY DEMANDED**

Defendants.
_____

**COLLECTIVE AND CLASS ACTION COMPLAINT**
_____

Plaintiffs, Paul Otis, Megan Hurley Otis, Stacy Rahn, Kaitlyn Jennings, Staci Walker, Kayla Riggins, Tanya Wilson, Alexa Lucas, and Clint Beeler, individually, and on behalf of all others similarly situated current and former tipped employees, known and unknown, for their Collective and Class Action Complaint against O'Charley's LLC, O'Charley's Management Company, LLC, O'Charley's Service Company, LLC, American Blue Ribbon Holdings, LLC, and Hazem Ouf, (hereinafter "O'Charley's" or "Defendants") allege as follows:

# I.

## __INTRODUCTION__

1.  This lawsuit is brought against O'Charley's as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* and a class action under Federal Rule of Civil Procedure 23 ("Rule 23") and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq*., and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq*., to recover unpaid minimum wages and overtime compensation for Plaintiffs and other similarly situated employees who are members of a class as defined herein and currently or previously employed by O'Charley's. O'Charley's operates restaurants throughout Illinois and other states across the Midwestern and Southeastern United States. Plaintiffs and the classes they represent are current and former employees of O'Charley's, working as servers, bartenders, hosts, and other tipped hourly employees. O'Charley's paid its tipped employees sub-minimum hourly wages under the tip-credit provisions of the FLSA and IMWL. Those provisions permit employers of tipped employees to pay wages less than the minimum wage, so long as employers comply with other requirements of the tip-credit provisions.  O'Charley's willfully disregarded those requirements, and thus violated federal and state minimum wage and overtime laws. Primarily, O'Charley's has a policy of regularly assigning and paying tipped employees sub-minimum wages to perform an array of tasks outside the duties of their tipped positions. Among the practices that O'Charley's utilizes to deny Plaintiffs and the class the applicable minimum wage rates are the following: (a) requiring and inducing servers and other tipped employees to perform unrelated, non-tip producing tasks, for distinct periods of time, including dishwashing, food preparation, cleaning, maintenance, and

other "back of the house" duties; and (b) by requiring servers to spend more than twenty (20) percent of their time performing non-tipped duties, while serving customers and, therefore, hindering their ability to earn tips.

In addition, O'Charley's' practices required and induced its tipped employees to perform "off the clock" work without being clocked in to its centralized timekeeping system. O'Charley's' practices included its failure to compensate its tipped employees at the applicable overtime compensation rate for all hours worked in excess of forty (40) in any given workweek.

Further, O'Charley's failed to pay Plaintiffs and the class, for all time worked, in violation of the FLSA and IWPCA. The FLSA and IWPCA violations principally occurred in two ways: (1) Plaintiffs and the class were instructed and induced by supervisors to not "clock in" until their first table was seated or until a specified time after they had already started working at the beginning of their shift and they were instructed and induced by supervisors to "clock out" and continue to perform and complete their job duties at the end of their shift; and (2) supervisors would "clock out" employees towards the end of their shift and induce employees to continue to perform and complete their job duties off-the-clock, unknowingly.

## II.

## <u>JURISDICTION AND VENUE</u>

2. The FLSA authorizes court actions by private parties to recover damages for violations of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claims are based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiffs are residents of this district, and O'Charley's regularly conducts business in, and has engaged and continues to engage in wrongful conduct alleged herein in this district.

## III.

## FLSA CLASS DESCRIPTION

4.      Plaintiffs bring this action on behalf of the following similarly situated persons:

> All current and former tipped employees, also classified as "bartenders, servers or hosts", of O'Charley's in the United States who work (or have worked) at O'Charley's restaurant(s) at any time during the applicable limitations period covered by this Collective Action Complaint (*i.e.* two years for FLSA violations and, three years for willful FLSA violations) up to and including the date of final judgment in this matter, and who is a Named Plaintiff or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b). (Collectively, "the FLSA Class").

## IV.

## ILLINOIS RULE 23 CLASS DESCRIPTION

5.      Plaintiffs bring this action on behalf of the following class of persons:

> All current and former tipped employees, also classified as "bartenders, servers or hosts", of O'Charley's in the State of Illinois who work (or have worked) at O'Charley's restaurant(s) at any time during the three years since the filing of this Complaint up to and including the date of final judgment in this matter, and

who is a Named Plaintiff or elect to opt-in to this action pursuant

to the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq*., and

the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et.*

*seq.*. (Collectively, "the IL Rule 23 Class").

**V.**

## PARTIES

6.     Defendant O'Charley's LLC is a Tennessee Limited Liability Company with its principal

executive office located at 3038 Sidco Drive, Nashville, Davidson County, Tennessee

37204-4506.  O'Charley's LLC was an "employer" of Plaintiffs and similarly situated

workers, as that term is defined in the FLSA, 29 U.S.C. § 203(d), IMWL, 820 ILCS

105/3(c), and the IWPCA, 820 ILCS 115/2. According to the Tennessee Secretary of

State, O'Charley's LLC may be served through its registered agent for service of process,

CT Corporation System, 800 S. Gay Street, Knoxville, Tennessee 37929-9710.

7.     Defendant O'Charley's Management Company, LLC is a Tennessee Limited Liability

Company with its principal executive office located at 3038 Sidco Drive, Nashville,

Davidson County, Tennessee 37204-4506.  O'Charley's Management Company, LLC was

an "employer" of Plaintiffs and similarly situated workers, as that term is defined in the

FLSA, 29 U.S.C. § 203(d), IMWL, 820 ILCS 105/3(c), and the IWPCA, 820 ILCS 115/2.

According to the Tennessee Secretary of State, O'Charley's Management Company, LLC

may be served through its registered agent for service of process, CT Corporation

System, 800 S. Gay Street, Knoxville, Tennessee 37929-9710.

8.     Defendant O'Charley's Service Company, LLC is a Tennessee Limited Liability

Company with its principal executive office located at 3038 Sidco Drive, Nashville,

Davidson County, Tennessee 37204-4506. O'Charley's Service Company, LLC was an "employer" of Plaintiffs and similarly situated workers, as that term is defined in the FLSA, 29 U.S.C. § 203(d), IMWL, 820 ILCS 105/3(c), and the IWPCA, 820 ILCS 115/2. According to the Tennessee Secretary of State, O'Charley's Service Company, LLC may be served through its registered agent for service of process, CT Corporation System, 800 S. Gay Street, Knoxville, Tennessee 37929-9710.

9. Defendant American Blue Ribbon Holdings LLC is a Delaware Limited Liability Company, with its principal place of business at 3038 Sidco Drive, Nashville, Tennessee 37204-4506. Defendant American Blue Ribbon Holdings, LLC is the parent of O'Charley's, LLC, O'Charley's Management Company, LLC, and O'Charley's Service Company, LLC. Defendant American Blue Ribbon Holdings, LLC was an "employer" of Plaintiffs and similarly situated workers, as that term is defined in the FLSA, 29 U.S.C. § 203(d), IMWL, 820 ILCS 105/3(c), and the IWPCA, 820 ILCS 115/2. According to its website, "American Blue Ribbon Holdings purchased O'Charley's early in 2012, and just months after unveiled a revitalized identity and guest experience – including refurbished store interiors and exteriors, and a new brand mark and menu – to be rolled out throughout company's 213 restaurants nationwide. The full reimagination of Nashville-based restaurant chain was prompted by ABRH going back to O'Charley's roots, to the beginning, to what was true." *See http://www.abrholdings.com/our-brands/o-charleys/.* American Blue Ribbon Holdings, LLC can be served through its registered agent for service of process, CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

10. Defendant Hazem Ouf is an adult individual and resident of the State of Tennessee and who, at times relevant to this Complaint, has been the President and Chief Executive Officer and owner of American Blue Ribbon Holdings, LLC, the parent of the O'Charley's Defendants. Defendant Ouf, upon information and belief, exercised operational control over significant aspects of O'Charley's day-today functions and is therefore individually liable for any violation of the FLSA. Upon information and belief, Defendant Ouf: (1) has significant ownership interest in the corporate Defendants; (2) was personally responsible for the decisions that lead to the conduct described herein, which violated the FLSA, IMWL and IWPCA; and (3) had control of significant aspects of the corporate Defendants' day-to-day operations, including compensation of employees. Defendant Ouf may be served for purposes of process at 3038 Sidco Drive Nashville, TN 37204.

11. Plaintiff Paul Otis currently resides in and is domiciled in this District and was employed by O'Charley's as a tipped employee at its Champaign, Illinois restaurant during the relevant period herein.

12. Plaintiff Megan Hurley Otis currently resides in and is domiciled in this District and was employed by O'Charley's as a tipped employee at its Champaign, Illinois restaurant during the relevant period herein.

13. Plaintiff Stacy Rahn currently resides in and is domiciled in this District and was employed by O'Charley's as a tipped employee at its Champaign, Illinois restaurant during the relevant period herein.

14.    Plaintiff Kaitlyn Jennings currently resides in and is domiciled in this District and was employed by O'Charley's as a tipped employee at its Champaign, Illinois restaurant during the relevant period herein.

15.    Plaintiff Staci Walker currently resides in and is domiciled in this District and was employed by O'Charley's as a tipped employee at its Champaign, Illinois restaurant during the relevant period herein.

16.    Plaintiff Kayla Riggins currently resides in and is domiciled in this District and was employed by O'Charley's as a tipped employee at its Champaign, Illinois restaurant during the relevant period herein.

17.    Plaintiff Tanya Wilson currently resides in and is domiciled in this District and was employed by O'Charley's as a tipped employee at its Champaign, Illinois restaurant during the relevant period herein.

18.    Plaintiff Alexa Lucus currently resides in and is domiciled in this District and was employed by O'Charley's as a tipped employee at its Champaign, Illinois restaurant during the relevant period herein.

19.    Plaintiff Clint Beeler currently resides in and is domiciled in this District and was employed by O'Charley's as a tipped employee at its Champaign, Illinois restaurant during the relevant period herein.

20.    The Named Plaintiffs' Consents to Join this Collective Action are attached hereto as Collective Exhibit 1.

21.    Along with its parent company, American Blue Ribbon Holdings, LLC, and other affiliated companies, Defendants own and operate several hundred O'Charley's Restaurants throughout the United States.

22.  Defendants constitute an integrated enterprise because Defendants' related activities (i.e. jointly owning and operating O'Charley's restaurants) performed (either through unified operation or common control) by any person or persons [are] for a common business purpose as that term is defined in the FLSA, 29 U.S.C. § 203(r).

## VI.

## ALLEGATIONS

23.  Defendants or O'Charley's own and operate O'Charley's restaurants in numerous states across the United States, including Illinois.

24.  The primary function of O'Charley's restaurants is to sell food and beverage items to customers.

25.  At all times material hereto, Plaintiffs were "employees" of Defendants as defined by the IMWL, 820 ILCS 105/3(d), the FLSA, 29 U.S.C.§ 203(d), and the IWPCA, 820 ILCS 115/2. Plaintiffs and the class were not exempt from the minimum wage and overtime provisions of the IMWL and the FLSA.

26.  At all times relevant hereto, Defendants were an "employer" as defined in the IMWL, 820 ILCS 105/3(c), the FLSA, 29 U.S.C. § 203(d), and the IWPCA, 820 ILCS 115/2. Defendants are out-of-state foreign companies that own and operate restaurants in Illinois, and as an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1). Defendants' employees are engaged in interstate commerce and Defendants' annual gross sales made or business done exceeds Five Hundred Thousand Dollars and 00/100 ($500,000.00), exclusive of excise taxes. During the course of their employment by Defendants, Plaintiffs handled goods,

including perishable produce and food items, and other food products, that moved through interstate commerce.

27.    O'Charley's employed Plaintiffs and those similarly situated and were responsible for setting pay and overtime rates, including overtime pay during the relevant period of time in question.

28.    The decisions regarding Plaintiffs' and other members of the class' compensation and other terms of employment were made through a centralized management of O'Charley's corporate headquarters located in Nashville, Davidson County, Tennessee.

29.    O' Charley's has had a centralized plan, policy and practice (scheme) of strictly enforcing restricted hours of compensable work per week (budgeted labor) by providing incentives to restaurant  managers to stay within or below such budgeted labor on the one hand and, subjecting those who failed to stay within such budgeted hours to disciplinary action on the other hand, even though such budgeted labor was/is inadequate to meet the operational demands and needs of its restaurants which, in turn, forced and induced restaurant managers to encourage, entice, permit, induce and/or require Plaintiffs and those similarly situated to perform work and induced "off the clock" work, forced and induced restaurant managers to avoid compensating Plaintiffs and similarly situated tipped employees with supplemental pay, and, forced and induced restaurant managers to require and induce Plaintiffs and those similarly situated to perform duties unrelated to their tipped occupation for which they were not paid at the minimum wage rate, all in order to meet and/or stay below their allotted budgeted labor.

30.    Defendants maintained a policy or practice whereby tipped workers were required to perform non-tip producing side work ***unrelated*** to the employee's tipped occupation. As

a result, tipped workers are engaged in a dual occupation while being compensated at the tip credit rate.

31. The side work and dual job tasks that Defendants required and induced tipped workers to perform includes, but was not limited to: (1) sweeping the floors of the restaurant; (2) cleaning the stainless steel kitchen appliances; (3) folding and restocking to-go food containers; (4) restocking napkins; (5) emptying garbage bins; (6) cleaning server service stations; (7) restocking dinnerware; (8) refilling ice; (9) cleaning and refilling condiment containers; (10) cleaning and refilling sugar caddies; (11) brewing coffee and tea; (12) cutting fruit; (13) plating and preparing food for customers, such as desserts and salads; (14) rolling silverware; (15) deep cleaning of booths; (16) polishing and shining brass and lamps; (17) polishing all kick plates/terminals (to go); (18) empty and clean bread warmer; (19) defrost, empty and clean freezer; (20) clean and sanitize ice bins; (21) cleaning alley walls; (22) cleaning white walls; (23) detail all stainless steel in ally and front waiting area; (24) polish all wood work, ledges and chairs with lemon oil; (25) cleaning all tables and booths with orange force; (26) cleaning all window blinds; (27) cleaning and detailing the front service area; and (28) cleaning all spigots.

32. The side work and dual job duties described above are not specific to particular customers, tables, or sections, but are performed in mass quantities for distinct periods of time.

33. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments.

34.     However, Defendants did not allow its tipped workers to clock in at the full minimum wage rate when performing the side work and dual jobs described in this Complaint, although Defendants had the capacity to do so.

35.     O'Charley's has had a centralized plan, policy and practice (scheme) of working Plaintiffs and similarly situated class members "off the clock" in a variety of ways and, therefore, constituting a unified theory of common violations of the FLSA and the IMWL.

36.     At all times material to this action, Plaintiff and those similarly situated are or have been "employees" of O'Charley's as defined by Section 203(e)(1) of the FLSA and, worked for O'Charley's  within the territory of the Unites States within three (3) years preceding the filing of this lawsuit.

37.     At all times material to this action, O'Charley's has been an enterprise engaged in commerce or in the production of goods for commerce as defined by Section 203(s)(1) of the FLSA, with annual revenue in excess of $500,000.00.

38.     At all times material to this action, O'Charley's has been subject to the pay requirements of the FLSA because it is an enterprise in interstate commerce and its employees are engaged in interstate commerce.

39.     Plaintiffs and all other similarly situated persons are current or former employees of O'Charley's.

40.     O'Charley's employs a centralized uniform electronic time keeping system for tracking and reporting employee hours worked at each of its restaurants.

41.     O'Charley's has a policy and practice of paying its tipped employees, including servers, bartenders and hosts, sub-minimum hourly wages ($4.95 per hour for servers and $5.25

for bartenders and hosts in Illinois) under the tip-credit provisions of federal and, where it exists, state law.

42.     Under the tip-credit provisions of the FLSA, an employer of tipped employees may, in limited circumstances, pay such employees less than the minimum hourly wage and take a "tip credit" against its minimum wage obligations. But an employer is not permitted to take a tip credit against its minimum wage obligations in either of the following circumstances: (1) when it requires its tipped employees to perform non-tipped work that is *unrelated* to the employee's tipped occupation; or (2) when it requires its tipped employees to perform non-tipped work that, although *related* to the employee's tipped occupation, exceeds twenty (20) percent of the employee's time worked during a shift. *See e.g., Driver v. AppleIllinois, LLC,* 739 F.3d 1073, 1075 (7th Cir. 2014) (Posner, J.) (explaining that when tipped employees perform "non-tipped duties" that "are *unrelated* to their tipped duties … such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend on that work") (emphasis added); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than twenty (20) percent) performing *related* but non-tipped duties should be paid at the full minimum wage for that time").

43.     O'Charley's has a policy and practice of paying Plaintiffs and the class sub-minimum, tip-credit wages even when it requires them to perform non-tipped work that is *unrelated* to their tipped occupation, such as sweeping, mopping, and vacuuming restaurant floors, preparing food, including slicing fruit, rolling silverware, and washing restaurant dishes, all of which violates the FLSA.

13

44.     As a result, Plaintiffs and the other members of the class are entitled to at least the applicable minimum wage for all unrelated non-tip producing work without applying a tip credit.

45.     Furthermore, Plaintiffs and other members of the class who have worked in excess of forty (40) hours per week are entitled to receive overtime compensation for such unrelated non-tip producing work without applying a tip credit.

46.     The net effect of O'Charley's plan, policy and practice of requiring tipped employees to perform ***unrelated***, non-tip producing work while clocked-in as a tipped employee is that it willfully failed to pay Plaintiffs and other members of the class applicable minimum wages and overtime compensation in order to save payroll costs and payroll taxes. O'Charley's therefore enjoyed ill-gained profits at the expense of Plaintiffs and the class.

47.     In addition to performing work totally ***unrelated*** to tip-producing work while clocked into O'Charley's uniform electronic timekeeping system as a tipped employee, for which work Plaintiffs and other members of the class were paid only sub-minimum wages, and, pursuant to O'Charley's uniform policies and practices, Plaintiffs and other members of the class have been required to perform non-tipped maintenance and preparation work incidental to their server duties, such as rolling silverware, refilling sugar caddies, salt and pepper shakers, ice, condiments, cleaning chairs, tables, booths, restaurant artifacts and décor, lights, blinds, windows, as well as closing out customers checks and performing pre-closing cleaning tasks, such as vacuuming and/or sweeping the server's assigned area and checking dishes, napkins, and utensils as well as other such "side work" in excess of 20% of their work time without being paid the applicable minimum

wage rates for such percentages of "side work", all of which violates the FLSA. *See* 29 U.S.C. §§ 203(m) and 203(t).

48.     As a result, Plaintiffs and other members of the class are entitled to at least the applicable minimum wage for all such "side work" in excess of twenty percent (20%) of their work time, without applying a tip credit.

49.     Furthermore, Plaintiffs and other members of the class who have worked in excess of forty (40) hours per week are entitled to receive overtime compensation for all such "side work" without applying a tip credit.

50.     The net effect of O'Charley's plan, policy and practice of requiring tipped employees to perform "side work" for more than twenty percent (20%) of their work time while clocked-in as a tipped employee is that it willfully failed to pay Plaintiffs and the other members of the class for all straight time work, minimum wages and overtime compensation in order to save payroll costs and payroll taxes. O'Charley's thereby enjoys ill-gained profits at the expense of the Plaintiff and the class.

51.     The U.S. Department of Labor's Fact Sheet #15 provides that "the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13)."

52.     According to the regulation promulgated by the U.S. Department of Labor, "…tips are the property of the employee whether or not the employer has taken a tip credit under section (3) of the FLSA." 29 C.F.R. § 531.52.

53.     O'Charley's employs a uniform plan, policy and practice is to encourage, permit, require and induce Plaintiffs and other members of the class to perform prescribed duties "off the clock" before, during and after their regular scheduled shifts.

54.     As a result of Plaintiffs and other members of the class being required to, encouraged, permitted, required or induced to perform prescribed duties "off the clock," "O'Charley's timekeeping records do not reflect the actual total hours worked by Plaintiff and members of the class.

55.     As a consequence of O'Charley's timekeeping records not reflecting actual hours worked, when the unpaid "off the clock" work time is added to their recorded time, Plaintiffs and other members of the class who have worked in excess of forty (40) hours per week are entitled to overtime compensation for such work time.

56.     As a consequence of O'Charley's timekeeping records not reflecting the actual hours worked by Plaintiffs and other members of the class, when the unpaid "off the clock" work time is added to their recorded time, Plaintiffs and other members of the class who, as a result, will have been paid less than the applicable minimum wage rate required by FLSA, are entitled to minimum wages for all such "off the clock" work time, without applying a tip credit.

57.     The net effect of O'Charley's plan, policy and practice of encouraging, permitting, requiring and inducing Plaintiffs and other members of the class to perform "off the clock" work is that it willfully failed to pay Plaintiffs and other members of the class applicable minimum wage rates and premium pay for overtime work in order to save payroll costs and payroll taxes. O'Charley's thereby enjoys ill-gained profits at the expense of its tipped employees.

58.     Plaintiffs' average pay (*i.e.*, total weekly compensation divided by total weekly hours worked) in every workweek of their employment (or virtually every workweek), exclusive of tips, fell below the federal and Illinois minimum wage.

59.     O'Charley's required its tipped employees to perform non-tipped work each of their scheduled shifts.

60.     O'Charley's required its tipped employees to perform non-tipped work before its restaurants were open to customers.

61.     O'Charley's required its tipped employees to perform non-tipped work after its restaurants were closed to customers.

62.     O'Charley's has no policies prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

63.     O'Charley's does not track, or maintain records regarding, the amount of time tipped employees spend performing unrelated, non-tipped work.

64.     O'Charley's uses a standard point-of-sale system in all of its O'Charley's restaurants, which is integrated to its central offices through a secure, high speed internet connection.

65.     O'Charley's analyzes and evaluates information collected by its point-of-sale system, including labor cost information for each of its restaurants.

66.     Information collected by O'Charley's point-of-sale system is capable of showing the time elapses between when a tipped employee (excluding hosts) first "clocks in" for a shift and when that employee places his or her first customer order.

67.     Likewise, information collected by O'Charley's point-of-sale system is capable of showing the time that elapses between when a tipped employee (excluding hosts) closes out his or her last customer check and when that employee "clocks out" for the shift.

68.     In its point-of-sale system, O'Charley's can create different "clock in" codes that would allow its tipped employees to "clock in" at the full minimum wage rate when performing

unrelated, non-tipped work, and to "clock in" in at the sub-minimum tip-credit wage rate when serving customers.

69. O'Charley's did not allow its tipped employees to "clock in" at the full minimum wage rate when performing unrelated, non-tipped work described in this Collective Action Complaint, although O'Charley's had the capacity to do so.

70. O'Charley's, or its affiliated companies, operate training programs for O'Charley's store managers so that they are trained in the same policies and procedures.

71. Defendants operate its O'Charley's branded restaurants as a chain, so that customers can obtain essentially the same food and drink items and experience the same customer service at all of Defendants' O'Charley's restaurants.

72. Although at this stage Plaintiffs are unable to state the exact amount owed to them and other members of the class, they believe such information will become available during the course of discovery.  However, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of proof of overcoming such testimony shifts to the employer.

## VII.

## FLSA COLLECTIVE ACTION ALLEGATIONS

73. Plaintiffs bring this action on behalf of themselves and the class as a collective action who elect to opt in to this action pursuant to the FLSA, 29 U.S.C. §§ 206, 207, and 216(b). The other similarly situated employees have been defined in Paragraph 4 of this Collective Action Complaint, titled "FLSA Class Description."

74. The claims under the FLSA may be pursued by those who opt-in to this case under 29 U.S.C. § 216(b).

18

75.     At all relevant times, Plaintiffs and the FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiffs at the legally required minimum wage for all hours worked and one-and-one-half times this rate for work in excess of 40 hours per workweek, requiring tipped workers to engage in dual job duties and to perform related side work for more than twenty percent of their work time.

76.     The members of the class are so numerous that joinder of all other members of the class is impracticable.  While the exact number of the other members of the class is unknown to Plaintiffs at this time and, can only be ascertained through applicable discovery, Plaintiffs believe there are at least thousands of individuals in the class.

77.     The claims of Plaintiffs are typical of the claims of the class.  Plaintiffs and the other members of the class work or have worked for O'Charley's at its restaurants and are/were classified as "tipped employees", performed the same category of job duties and, are/were subjected to the same operational, compensation, and timekeeping policies and practices, including not being paid for all hours worked, under a unified theory of common FLSA violations.

78.     Common questions of law and fact exist as to the class which predominate over any questions only affecting other members of the class individually and include, but are not limited to, the following:

- Whether Plaintiffs and other members of the class were expected, required and induced to work hours without compensation;

- Whether O'Charley's suffered and permitted Plaintiffs and other members of the class to work hours without compensation;

- Whether O'Charley's failed to pay Plaintiffs and other members of the class all applicable straight time wages for all hours worked;

- Whether O'Charley's failed to pay Plaintiffs and other members of the class all overtime compensation due them for all hours worked in excess of forty (40) hours per week;

- The correct statutes of limitations for Plaintiffs' claims and the claims of the other members of the class;

- Whether Plaintiffs and other members of the class are entitled to damages, including but not limited to liquidated damages, and the measure of the damages; and,

- Whether O'Charley's is liable for interest, attorneys' interest, fees, and costs.

79.     Plaintiffs will fairly and adequately protect the interests of the class as their interests are aligned with those of the other members of the class.  Plaintiffs have no interests adverse to the class and, Plaintiffs have retained competent counsel who are experienced in collective action litigation.

80.     O'Charley's is aware or should have been aware that federal law requires it to pay tip-credit employees full minimum wage when it requires them to perform non-tipped work that (a) is ***unrelated*** to their tipped occupation or (b) exceeds twenty (20) percent of their time worked during individual work weeks.

81.     Plaintiffs are similarly situated to O'Charley's or Defendants' other tipped or tip-credit employees because those employees were also paid sub-minimum hourly wages while they were subject to O'Charley's illegal policy of requiring them to perform non-tipped work – such as washing dishes, preparing food, and cleaning and maintaining the restaurants – that (a) is ***unrelated***  to their tipped occupation or (b) exceeds twenty (20) percent of their time worked each shift as a tipped or tip-credit employee.

82. Plaintiffs are similarly situated to O'Charley's or Defendants other tipped or tip-credit employees because they were not compensated for their "off the clock" work at the applicable minimum wage rate for hours less than forty (40) in individual workweeks and at the applicable overtime compensation wage rate for all hours worked in excess of forty (40) in individual workweeks.

83. There are numerous similarly situated current and former tipped employees who worked at Defendants' O'Charley's restaurants who would benefit from the Court authorizing issuance of notice of this lawsuit so that these employees may opt in to this lawsuit.

84. Similarly situated tipped employees are known to Defendants and are identifiable in Defendants' payroll records.

85. The collective action mechanism is superior to the other available methods for a fair and efficient adjudication of the controversy.  The expenses, costs, and burden of litigation suffered by individual other members of the class in a collective action are relatively small in comparison to the expenses, costs, and burden of litigation of individual actions, making it virtually impossible for other members of the class to individually seek address for the wrongs done to them.

86. Plaintiffs and other members of the class have suffered and will continue to suffer irreparable damage from the unlawful policies, practices, and procedures implemented by O'Charley's.

**COUNT I**

**FAIR LABOR STANDARDS ACT VIOLATIONS – MINIMUM WAGE**
**(On Behalf of the entire Class)**

87. Plaintiffs, on behalf of themselves and other members of the class, repeat and re-allege Paragraphs 1 through 86 above as if they were fully set forth herein.

88.     At all times relevant herein, O'Charley's has been and continues to be an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 206(a) and 207(a).

89.     Pursuant to O'Charley's uniform compensation policies, it has failed to pay Plaintiffs and other members of the class the applicable minimum wage rates as required by the FLSA.

90.     Because of O'Charley's failure to pay Plaintiffs and other members of the class for all hours worked, Plaintiffs and other members of the class have not received wages equal to or in excess of the applicable minimum wage as required by the FLSA for all hours worked.

91.     At all times herein, O'Charley's uniform plan, policy and practice of willfully failing to pay Plaintiffs and members of the class at least the required minimum wage rate of $7.25 an hour and, one and one-half times their regular hourly rate of pay for all hours worked in excess of forty (40) within any one week period, involving a variety of unpaid "off the clock" time, constitutes a unified theory of common FLSA violations.

92.     At all times relevant, O'Charley's had actual and/or constructive knowledge of willfully refusing to pay Plaintiffs and other members of the class for all hours worked.

93.     As a result of O'Charley's willful failure to compensate Plaintiffs and other members of the class for at least the applicable minimum wage rate, it has violated and continues to violate the FLSA.

94.     Plaintiffs and the other members of the class are therefore entitled to compensation for unpaid minimum wages at an hourly rate required by the FLSA, plus applicable overtime compensation and an additional amount as liquidated damages, together with interest, costs, and reasonable attorney's fees for the three-year statutory period under the FLSA.

**COUNT II**

**FAIR LABOR STANDARDS ACT VIOLATIONS – OVERTIME**
**(On Behalf of the entire Class)**

95.    Plaintiffs, on behalf of themselves and other members of the class, repeat and re-allege

Paragraphs 1 through 94 above as if they were set forth herein.

96.    At all times relevant herein, O'Charley's has been and continues to be an employer

engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a)

and 207(a).

97.    At all times relevant herein, O'Charley's employed (and/or continues to employ) Plaintiffs

and each of the other members of the class within the meaning of the FLSA.

98.    At all times relevant herein, O'Charley's had a uniform plan, policy and practice of

willfully refusing to pay Plaintiffs and other members of class appropriate overtime

compensation for all hours worked in excess of forty hours per week by Plaintiff and

each of the other members of the class.

99.    At all times herein, O'Charley's uniform plan, policy and practice of willfully failing to

pay Plaintiffs and members of the class at least the required minimum wage rate of $7.25

an hour and, one and one-half times their regular hourly rate of pay for all hours worked

in excess of forty (40) within any one week period, involving a variety of unpaid "off the

clock" time, constitutes a unified theory of common FLSA violations.

100.   At all times relevant herein, O'Charley's had actual and/or constructive knowledge of

willfully refusing to pay Plaintiffs and other members of the class for all hours worked.

101.   As a result of O'Charley's willful failure to compensate Plaintiffs and other members of

the class the applicable federal minimum wage for all hours worked at a rate not less than

one and one-half times the regular rate of pay for work performed in excess of forty (40)

hours per work week, it has violated and (continues to violate) the FLSA, 29 U.S.C. § 255(a).

102.   Due to O'Charley's willful FLSA violations, Plaintiffs and the other members of the class are entitled to recover from O'Charley's compensation for unpaid overtime wages, an additional equal amount as liquidated damages, as well as interest, reasonable attorneys' fees, costs, and disbursements relating to this action for the three-year statutory period under the FLSA, 29 U.S.C. § 216(b).

## VIII.

## ILLINOIS CLASS ACTION ALLEGATIONS

103.   Plaintiffs and the class bring the Fourth, Fifth, Sixth and Seventh Causes of Action, Illinois Wage and Hour claims, under Rule 23, on behalf of themselves and all similarly situated current and former tipped workers employed at O'Charley's restaurants in Illinois between July 13, 2013, which is three years prior to the filing of this Complaint, and the date of final judgment in this matter ("IL Rule 23 Class").

104.   Excluded from the IL Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the IL Rule 23 Class. The members of the IL Rule 23 Class ("IL Rule 23 Class Members") are readily ascertainable from Defendants' payroll records.

105.   The members of the IL Rule 23 Class ("IL Rule 23 Class Members") are readily ascertainable from Defendants' payroll records.

106.    The IL Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

107.    There are more than five hundred (500) IL Rule 23 Class Members.

108.    Plaintiffs' claims are typical of those claims which could be alleged by any IL Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each IL Rule 23 Class Member in separate actions.

109.    All the IL Rule 23 Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wages, failing to pay overtime, and failing to pay for off-the-clock work.

110.    Plaintiffs and the IL Rule 23 Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq*., and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et. seq*.

111.    Plaintiffs and the IL Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

112.    Plaintiffs are able to fairly and adequately protect the interests of the IL Rule 23 Class Members and have no interests antagonistic to the IL Rule 23 Class Members.

113.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

114.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy–particularly in the context of wage and hour litigation–where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

115.    Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

116.    Because the losses, injuries, and damages suffered by each of the individual IL Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual IL Rule 23 Class Members to redress the wrongs done to them.

117.    The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

118.    The prosecution of separate actions by individual IL Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual IL Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the IL Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties.

119.    The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

120.   Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

121.   This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

122.   Common questions of law and fact exist as to the IL Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a) whether Defendants violated the IMWL and the IWPCA, and the supporting Illinois Department of Labor Regulations;

(b) whether Defendants employed Plaintiffs and the IL Rule 23Class within the meaning of the IMWL and the IWPCA;

(c) whether Defendants paid Plaintiffs and the IL Rule 23 Class at the proper minimum wage rate for all hours worked;

(d) whether Defendants properly compensated Plaintiffs and the IL Rule 23 Class for hours worked in excess of forty (40) hours per workweek;

(e) whether Defendants have a policy of requiring Plaintiffs and the IL Rule 23 Class to engage in work outside of their tipped occupation that should have been paid at the full Illinois minimum wage;

(f) whether Defendants maintained a policy or practice of requiring, suffering, or permitting Plaintiffs and the IL Rule 23 Class to work off-the-clock without proper compensation under Illinois law;

and

(g) the nature and extent of class-wide injury and the measure of damages for those injuries.

## COUNT III

### ILLINOIS MINIMUM WAGE LAW VIOLATIONS – MINIMUM WAGES
#### (On Behalf of the IL Rule 23 Class)

123.   Plaintiffs, on behalf of themselves and other members of the class, repeat and re-allege Paragraphs 1 through 122 above as if they were fully set forth herein.

124.   This count arises from O'Charley's willful violation of the Illinois Minimum Wage Law, 820 ILCS 105/1. *et seq*., for O'Charley's failure to pay Plaintiffs and the class of tipped employees that they represent all their earned minimum wages. Plaintiffs and the class are current and former employees of O'Charley's who are due, and who have not been paid, minimum wages and overtime wages under the provisions of the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq*. Plaintiffs bring this Count III as a class action under 735 ILCS 5/2-801.

125.   Plaintiffs and other similarly-situated employees worked as servers, bartenders, hosts, and in other tipped positions.  O'Charley's paid those persons an hourly rate less than minimum wages; most recently, $4.95 per hour for servers and $5.25 per hour for bartenders and hosts.

126.   Defendants were required to pay Plaintiffs and the IL Rule 23 Class the full minimum wage at a rate of $8.25 per hour for all hours worked when O'Charley's was not allowed

28

to take a tip credit as specified throughout this Complaint, from July 1, 2010 to the present under the IMWL, 820 ILCS 105/4.

127.  An employer may pay a tipped employee less than minimum wage; that is, take a "tip credit," if the employee receives customer tips in an amount that, together with the sub-minimum wage, equal the minimum hourly wage.  IMWL, 820 ILCS 105/4(c); FLSA, 29 U.S.C. §203(m).  The tip credit provision does not apply to a tipped employee unless:  (1) the employer has informed the employee of the provisions of the tip credit subsection; and (2) the employee retains all tips received by the employee, except that the pooling of tips among tipped employees is permitted.  FLSA, 29 U.S.C. §204(m).

128.  Although O'Charley's took the tip credit by paying Plaintiffs and the class less than the minimum hourly wage, O'Charley's did not inform its tipped employees of the provisions of the tip credit subsection.

129.  O'Charley's has a practice of regularly utilizing tipped employees to perform "back of the house" duties and other work not within the scope of a tipped occupation.  Thus, O'Charley's regularly requires servers, bartenders, hosts and other tipped employees to perform such duties as dishwashing, food preparation, kitchen and bathroom cleaning, and trash removal, but continued to pay them tip-credit wages while the employees were engaged in those non-tipped duties.

130.  O'Charley's practices violate the minimum wage provisions of the IMWL and the FLSA.

131.  This action is properly maintained as a class action under Rules 23(a) and (b) because:

      A. The class is so numerous that joinder of all members is impracticable;

      B. There are questions of law or fact that are common to the class;

C. The claims or defenses of the Named Plaintiffs are typical of the claims or defenses of the class; and,

D. The Named Plaintiffs will fairly and adequately protect the interests of the class.

## Numerosity

132.   The total number of putative class members is in excess of five Hundred (500) individuals. The exact number of class members may easily be determined from Defendants' payroll records.

## Commonality

133.   There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the IMWL class in that Plaintiffs and all members of the class have been harmed by Defendants' failure to compensate current and former tipped employees at the applicable minimum wage rate for all time worked in under forty (40) hours as well as at the applicable overtime wage rate for all hours in excess of forty (40), in given workweeks during the statutory period. The common questions of law and fact include, but not limited to the following:

A. Whether Defendants paid Plaintiffs and the class at the tipped credit rate while they performed work not related to their tipped occupation in violation of the IMWL;

B. Whether Defendants failed to keep true and accurate records of the amount of time Plaintiffs and the class actually worked;

C. Whether Plaintiffs were paid the applicable minimum wage rate for all hours worked under forty (40) in given workweeks during the statutory period;

D. Whether Plaintiffs were paid for all hours worked in excess of forty (40) in given workweeks during the statutory period; and,

E. Whether Plaintiffs suffered damages and the proper measure of those damages.

134.  Plaintiffs anticipate that Defendants will raise defenses that are common to the class.

## Adequacy

135.  The Named Plaintiffs will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiffs and class members. Plaintiffs, moreover, have retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel specifically for wage and hour litigation.

## Typicality

136.  The claims asserted by the Named Plaintiffs are typical of the class members they seek to represent. The Named Plaintiffs have the same interests and suffer from the same unlawful practices as the class members.

137.  Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23.

## Predominance and Superiority

138.  The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this

controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

139.  On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantial and substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to, fashion methods to efficiently manage this action as a class action.

140.  Plaintiffs seek to certify this Count III, Count IV violation of the overtime provisions of the IMWL, and Count V, and Count VI, violation of the Illinois Wage Payment and Collection Act, as a class action and ask the Court to determine the rights of the classes pursuant to those statutes, and any other damages due, and to direct O'Charley's to account for all back wages, penalties and prejudgment interest thereon due to the Plaintiffs and the IL Rule 23 Class that they represent.

141. Counts III, IV, V, and VI are brought pursuant to 735 ILSC 5/2-801 because the class members similarly situated to Plaintiffs are so numerous that jointer of all members is impracticable.  Plaintiffs therefore bring this action on their own behalf as aggrieved employees, and in their representative capacity, against O'Charley's.  The individually named Plaintiffs and similarly-situated persons are equally affected by the minimum wage, maximum hour, and wage payment violations of O'Charley's; and the relief sought is for the benefit of the individual Plaintiffs and the classes that Plaintiffs represent.

142. In sum, the issues involved in this lawsuit present common questions of law and fact. These common questions of law and fact predominate over the variations which may exist between members of the classes, if any.  The individual Plaintiffs and the classes of similarly-situated persons on one hand, and O'Charley's on the other, have a commonality of interest in the subject matter and remedy sought, namely back wages plus penalties, interest, attorneys' fees and the cost of this lawsuit.  The individual Plaintiffs believe and assert that they are able to fairly and adequately represent and protect the interests of the classes.  If individual actions were required to be brought by each of the similarly-situated persons injured or affected, it would necessarily result in multiplicity of lawsuits, creating a hardship to the individuals and to the Court, as well as to O'Charley's.  Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the classes are entitled.

143. The books and records of O'Charley's are material to Plaintiffs' action as they disclose certain of the hours worked by each employee and the rate of pay for that week.

144.    O'Charley's violated the Illinois Minimum Wage Law by failing to compensate Plaintiffs and members of the class consistent with the minimum wage provisions.

145.    Pursuant to 820 ILSC 105/12(a), affected employees are entitled to recover unpaid wages for three years prior to the filing of this suit, plus punitive damages in the amount of two percent (2%) per month at the amount of underpayment.

**WHEREFORE,** Plaintiffs and the class pray for judgment against Defendants as follows:

A.    judgment in the amount of all back wages due as provided by the Illinois Minimum Wage Law;

B.    prejudgment interest on the back wages in accordance with 815 ILCS 205/2 and punitive damages pursuant to the formula set forth in 820 ILSC 105/12(a);

C.    reasonable attorneys' fees and costs of this action as provided by the Illinois Minimum Wage Law; and

D.    such other and further relief as this Court deems just and proper.

**COUNT IV**

**ILLINOIS MINIMUM WAGE LAW VIOLATIONS – OVERTIME WAGES**
**(On Behalf of the IL Rule 23 Class)**

146.    Plaintiffs, on behalf of themselves and other members of the class, repeat and re-allege Paragraphs 1 through 145 above as if they were fully set forth herein, including paragraphs regarding the numerosity, typicality, adequacy, commonality, predominance, and superiority of the IL Rule 23 Class.

147.    This Count IV is brought by Plaintiffs on behalf of a class pursuant to 735 ILCS 5/2-801.

148.    This Count arises from O'Charley's willful violation of the Illinois Minimum Wage Law, 820 ILSC 105/1, *et seq.*, for its failure to pay Plaintiffs and the class of tipped employees that they represent all their earned overtime pay for time worked in excess of forty (40)

34

hours in individual workweeks.  For all time worked in excess of forty (40) hours in individual workweeks, Plaintiffs and the class were entitled to be paid one and one half times the minimum hourly rate of pay.  Plaintiffs and the class are current and former tipped employees of O'Charley's who are due, and who have not been paid, all overtime wages under the maximum hour provisions of the Illinois Minimum Wage Law, 820 ILCS 105/4a.

149.    O'Charley's took a "tip credit" for wages paid to tipped employees, both overtime and straight-time hours.

150.    O'Charley's practices violate the overtime wage provisions of the IMWL and the FLSA.

151.    Accordingly, in addition to its failure to pay employees properly for all overtime worked, O'Charley's violated the maximum hour provisions of the IMWL by improperly taking the tip credit for those overtime hours it did pay.

**WHEREFORE,** Plaintiffs and the class pray for judgment against Defendants as follows:

A.     judgment in the amount of all back wages due as provided by the Illinois Minimum Wage Law;

B.     prejudgment interest on the back wages in accordance with 815 ILCS 205/2 and punitive damages pursuant to the formula set forth in 820 ILCS 105/12(a);

C.     reasonable attorneys' fees and costs of this action as provided by the Illinois Minimum Wage Law; and

D.     such other and further relief as this Court deems just and proper.

## COUNT V

### VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT
### Off the Clock
### (On Behalf of the IL Rule 23 Class)

152.   Plaintiffs, on behalf of themselves and other members of the class, repeat and re-allege Paragraphs 1 through 151 above as if they were fully set forth herein, including paragraphs regarding the numerosity, typicality, adequacy, commonality, predominance, and superiority of the IL Rule 23 Class.

153.   This Count V is brought by Plaintiffs on behalf of a class pursuant to 735 ILCS 5/2-801.

154.   Defendants have engaged in a widespread pattern, policy, and practice of violating the IWPCA, 820 ILCS 115/1, *et seq*., as detailed in this Complaint.

155.   At all relevant times herein, O'Charley's or Defendants were an "employer" as defined in the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et. Seq.*, and Plaintiffs and similarly-situated persons were "employee(s)" within the meaning of that Act. Defendants were at all times aware of their obligation to pay its hourly employees for all time they worked, and is aware of the compensation actually paid to Plaintiffs and the class.

156.   O'Charley's agreed to compensate their employees, including Plaintiffs and the class of hourly employees, for all time worked.

157.   However, O'Charley's instituted practices that resulted in its employees working certain time without compensation.  Some employees were instructed by their supervisors to "clock out," but to continue to work off the clock; some employees were unknowingly clocked out by a manager while they worked; other employees had accrued work time

reduced by supervisors.   In any event, the result was that O'Charley's failed to compensate Plaintiffs and the class of hourly employees for all the time they worked.

158.    The wage provisions of Act 115 of the IWPCA apply to Defendant and protect Plaintiffs and the IL Rule 23 Class.

159.    O'Charley's practices violate the provisions of the IWPCA and the FLSA.

160.    Accordingly, in addition to its failure to pay employees properly for all overtime worked, O'Charley's violated the provisions of the IWPCA by failing to compensate Plaintiffs and the IL Rule 23 Class for all hours worked.

**WHEREFORE,** Plaintiffs and the class pray for judgment against Defendants as follows:

A.    judgment in the amount of all back wages due as provided by the Illinois Wage Payment and Collection Act;

B.    prejudgment interest on the back wages in accordance with 815 ILCS 205/2 and punitive damages pursuant to the formula set forth in 820 ILCS 105/12(a);

C.    reasonable attorneys' fees and costs of this action;

D.    that the Court determine the rights of the parties and direct Defendants to account for all hours worked and wages paid to the class members during the temporality of the class; and

E.    such other and further relief as this Court deems just and proper.

## COUNT VI

### VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT
#### Unlawful Deductions From Wages or Final Compensation
#### (On Behalf of the IL Rule 23 Class)

161.   Plaintiffs and the IL Rule 23 Class, reallege and incorporate by reference all allegations in all preceding paragraphs, including paragraphs regarding the numerosity, typicality, adequacy, commonality, predominance, and superiority of the IL Rule 23 Class.

162.   Defendants made unlawful deductions from the wages of Plaintiffs and the IL Rule 23 Class. These deductions included, but were not limited to, customer walkouts.

163.   The deductions made from the wages of Plaintiffs and the IL Rule 23 Class were not authorized or required by law or in response to a valid wage assignment or wage deduction order.

164.   The deductions made from the wages of Plaintiffs and the IL Rule 23 Class were not expressly consented to in writing by Plaintiffs and the IL Rule 23 Class, or were not for the benefit of Plaintiffs and the IL Rule 23 Class.

165.   Through its knowing or intentional efforts to permit unauthorized deductions from the wages of Plaintiffs and the IL Rule 23 Class, Defendants have willfully violated IWPCA, 820 ILCS 115/1, *et seq*.

**WHEREFORE**, Plaintiffs and the proposed IL Rule 23 Class Members pray for judgment against Defendants as follows:

A.   judgment in the amount of all unlawful deductions;

B.   punitive damages in the amount of two percent (2%) per month of the amount of underpayment;

C.   reasonable attorneys' fees, and costs;

38

D.      such other and further relief as this Court deems just and proper.

## FINAL PRAYER FOR RELIEF

Whereas, Plaintiffs, individually, and/or on behalf of themselves and all other similarly situated other members of the class, request this Court to grant the following relief against O'Charley's LLC, O'Charley's Service Company, LLC, O'Charley's Management Company, LLC, American Blue Ribbon Holdings, LLC, and Hazem Ouf:

A.      Designation of this cause as a collective action on behalf of a company-wide FLSA Class and promptly issue notice pursuant to 29 U.S.C. § 216(a), apprising class members of the pendency of this action and permitting other members of the class to assert timely FLSA claims in this action by filing individual Consents under 29 U.S.C. § 216(b);

B.      An award of compensation for unpaid wages to Plaintiffs and other members of the class;

C.      An award of compensation for unpaid minimum wages to Plaintiffs and the other members of the class;

D.      An award of compensation for unpaid overtime wages to Plaintiffs  and other members of the class at the applicable overtime wage rate as required by the FLSA;

E.      An award of liquidated damages to Plaintiffs and other members of the class for FLSA violations;

F.      An award of prejudgment and post-judgment interest at the applicable legal rate to Plaintiff and other members of the class for FLSA violations;

G.      An award of costs, expenses, and disbursements relating to this action together with reasonable attorneys' fees and expert fees to Plaintiffs  and other members of the class for the FLSA violations;

H.      A declaration or ruling that the three-year statutory period for willful violations under the FLSA shall apply in this action;

I.       An award or judgment in the amount of all back wages due as provided by the Illinois Minimum Wage Law;

J.      An award of prejudgment interest on the back wages in accordance with 815 ILCS 205/2 and punitive damages pursuant to the formula set forth in 820 ILSC 105/12(a);

K.      An award of reasonable attorneys' fees and costs of this action as provided by the Illinois Minimum Wage Law;

L.      A declaration that Defendants violated the Illinois Minimum Wage Law;

M.      That the Court determine the rights of the parties and direct Defendants to account for all hours worked and wages paid to the class members during the temporality of the IL Rule 23 class;

N.      A declaration that Defendants violated the Illinois Wage Payment and Collection Act;

O.      An award of punitive damages in the amount of two percent (2%) per month of the amount of underpayment as to the IL Rule 23 Class; and

P.      Such other general and specific relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a **trial by jury** on all issues so triable.

Dated:  July 13, 2016

                                        Respectfully Submitted,


                                        s/ Gordon E. Jackson
                                        One of Plaintiffs' Attorneys


**JACKSON, SHIELDS, YEISER & HOLT**
Gordon E. Jackson
J. Russ Bryant
262 German Oak Drive
Memphis, Tennessee  38018
Tel:  (901) 754-8001
Fax:  (901) 759-1745
*gjackson@jsyc.com*
*rbryant@jsyc.com*

*Attorneys for the Plaintiffs and Putative Classes*